WALTER J. ROTHSCHILD, Judge.

J¡FACTS AND PROCEDURAL HISTORY

The parties, Cynthia Dufour Cannatella and Anthony Cannatella, were married on February 14, 1981. On May 12, 2010, Cynthia filed a Petition for Divorce, asserting that she was entitled to a divorce based on adultery, pursuant to LSA-C.C. art. 103(2).[1] Alternatively, she sought a divorce based on living separate and apart for 180 days from service of the petition, in *394 accordance with LSA-C.C. art. 102. On June 18, 2010, Anthony filed an Answer and Reconventional Demand, in which he denied the allegations of adultery and sought a divorce pursuant to LSA-C.C. art. 102 or, alternatively, LSA-C.C. art. 103.
On July 20, 2010, Cynthia filed a Motion to Set for Trial the merits of the divorce action based on adultery. On November 10, 2010, the merits of the divorce action came before the trial court, and the parties agreed to continue other pending issues, including permanent spousal support and fault, to another date.
13At trial, Anthony testified and admitted to the allegations of adultery. He testified that he started having an affair with Diane Perez in 2007 and it had continued since that time. He stated that Cynthia was not aware of the affair until May 2010, when she confronted them outside Ms. Perez’s home. Diane Perez was also called to the stand, and she admitted having a sexual relationship with Anthony since 2007.
Finally, Natalie Biondolillo testified that she is a Louisiana licensed investigator, and Cynthia hired her to perform surveillance of Anthony. She stated that she and another investigator established the surveillance outside Ms. Perez’s residence on May 11, 2010 at 5:30 p.m. At 6:52 p.m., Anthony and Ms. Perez arrived together in Anthony’s truck, parked under the carport, and entered the residence. The surveillance continued overnight, and neither Anthony nor Ms. Perez left the residence. The next morning, May 12, 2010, Ms. Perez left briefly and returned. Ms. Biondo-lillo testified that shortly thereafter, Anthony and Ms. Perez came out of the front door, embraced, and “had three kisses.”
At the conclusion of the testimony, the trial judge indicated that he was not finding that Anthony committed adultery, because the fault issues were reserved for a later date. Counsel for Cynthia argued that the issue to be determined later was whether Cynthia was free from fault, because she was the one seeking support. After further discussion, the trial judge granted the parties a divorce pursuant to LSA-C.C. art. 103, finding that they lived separate and apart for six months, not on the grounds of adultery. On December 1, 2010, the trial judge signed a judgment of divorce.[2] In the judgment, the trial judge stated that he received testimony during the adultery trial indicating that the parties had lived separate and apart in |4excess of six months, pursuant to LSA-C.C. art. 103. He also indicated that the court was pretermitting the issues of adultery and Anthony’s fault until the fault trial, which was set for hearing on February 10, 2011.
On December 16, 2010, Cynthia filed a Motion for New Trial, asserting that a divorce pursuant to LSA-C.C. art. 102 or 103 on the grounds of living separate and apart was not valid or supported by the evidence. She also noted that a divorce action under LSA-C.C. art. 102 was not before the court for hearing on November 10, 2010, and the time required for a LSA-C.C. art. 102 divorce had not passed. The Motion for New Trial was set for hearing on January 13, 2011.
On December 31, 2010, Anthony passed away. Thereafter, the Motion for New Trial was reset to February 10, 2011. On January 21, 2011, the executor of Anthony’s succession filed a Motion to Dismiss or in the Aternative for Summary Judgment, seeking dismissal of the pending *395 matters in this litigation, including Cynthia’s request to partition community property, her Motion for New Trial, the hearing on the issue of fault, her spousal support claims, and other pending issues. Cynthia filed an Opposition to this motion on February 1, 2011. In lieu of oral argument on the Motion to Dismiss, the matter was submitted on the briefs only. On March 2, 2011,[3] the trial judge rendered a judgment granting the executor’s Motion to Dismiss without prejudice, and he ruled that Cynthia could re-urge her motions in the succession proceedings.
Cynthia appeals both the November 10, 2010 judgment and the March 2, 2011 judgment.

LAW AND DISCUSSION

In her first assignment of error, Cynthia asserts that the trial court erred in granting a divorce pursuant to LSA-C.C. art. 103(1), because neither party had | ¡¡filed for a divorce based on LSA-C.C. art. 103(1)[4] and the evidence did not show that the requirements for such a divorce were met. She contends that the only petition for divorce pending before the trial court at the time of the hearing was her petition for divorce based on adultery or, alternatively, LSA-C.C. art. 102. She noted that the trial judge refused to make a ruling as to the allegation that Anthony committed adultery and indicated he would rule on this issue at a later date.
Anthony’s attorney responds that Anthony and Cynthia physically separated on March 29, 2010. He states that in Anthony’s Reconventional Demand, he sought a divorce pursuant to LSA-C.C. art. 102 or, alternatively, LSA-C.C. art. 103. Therefore, he concludes that the trial court properly granted a divorce pursuant to LSA-C.C. art. 103(1), because more than 180 days elapsed between the date of separation, March 29, 2010, and the date of the hearing, November 10, 2010.
The trial judge granted the parties a divorce pursuant to LSA-C.C. art. 103, which provides:

Except in the case of a covenant marriage, a divorce shall be granted on the petition of a spouse upon proof that:

(1) The spouses have been living separate and apart continuously for the requisite period of time, in accordance with Article 103.1, or more on the date the petition is filed;

(2) The other spouse has committed adultery; or

(3) The other spouse has committed a felony and has been sentenced to death or imprisonment at hard labor.

LSA-C.C. art. 103.1 provides that the requisite period of time, in accordance with LSA-C.C. arts. 102 and 103, is 180 days when the parties do not have any minor children born of the marriage. In the present case, the petition reflects that one child was born of the marriage and is now a major.
|fiThe trial judge indicated that the LSA-C.C. art. 103 divorce was granted under (1), which, read together with LSA-C.C. art. 103.1, provides that spouses without minor children must be living separate and apart for 180 days “on the date the petition is filed.” In Parker v. Parker, 95-1373, p. 4 (La.App. 3 Cir. 4/3/96), 671 So.2d 1143, 1145, the Third Circuit stated:
The legislature clearly intended that parties could receive an immediate La. *396 Civ.Code art. 103(1) divorce upon proof that they had been living separate and apart continuously for a period of six months or more on the date the petition is filed.
(Emphasis in original).
In the present case, both parties contend in their pleadings that they physically separated on March 29, 2010. Cynthia’s Petition for Divorce was filed on May 12, 2010. Although the parties had been separated for over 180 days as of the November 10, 2010 hearing, the parties clearly had not lived separate and apart for 180 days on the date the petition was filed. Thus, we find that the trial judge was without the authority to grant a divorce pursuant to LSA-C.C. art. 103(1).
However, the evidence presented at trial did establish that the requirements were met for a LSA-C.C. art. 103 divorce under (2), which provides for a divorce when the other spouse has committed adultery. At trial, both Anthony and his paramour admitted having a sexual relationship since 2007. Ms. Biondolillo, a private investigator, also testified that Anthony and Ms. Perez remained in Ms. Perez’s home overnight, and they were observed kissing the next morning. The direct admissions of Anthony and Ms. Perez, along with the testimony of the investigator, Ms. Biondolillo, establish that Anthony did commit adultery during his marriage to Cynthia.
LSA-C.C. art. 103 provides that a divorce “shall be granted” on the petition of a spouse upon proof that the other spouse committed adultery. In Cynthia’s petition, she sought a divorce based on adultery. The issue of whether or not |7adultery was committed by Anthony was set for trial and properly before the court on November TO, 2010. At trial, the evidence clearly established that Anthony committed adultery. Thus, Cynthia was entitled to a divorce on these grounds.
Accordingly, we affirm the Judgment of Divorce pursuant to LSA-C.C. art. 103. However, we amend the judgment to reflect that the LSA-C.C. art. 103 divorce is based on the grounds of adultery under (2), not living separate and apart for 180 days under (1).
In her second assignment of error, Cynthia contends that the trial court erred when it granted the Motion to Dismiss o,r in the Alternative for Summary Judgment. She states that a divorce action involving property rights of the parties is not extinguished on the death of one of the spouses, and her pending motions for partition of community property and reimbursement claims were not extinguished by Anthony’s death.
LSA-C.C.P. art. 428 provides that an action does not abate upon the death of a party unless the obligation or right is strictly personal. In Larocca v. Larocca, 597 So.2d 1000, 1007 (La.1992), the Louisiana Supreme Court held that the death of a party does not abate a divorce action to which there is an ancillary claim involving property interests. In McCann v. McCann, 10-1896, p. *5 (La.App. 1 Cir. 10/5/11), 77 So.3d 997, the First Circuit stated that while an action for divorce, alone, is a personal action, an action to divide the former community property and allocate debts is heritable and not a personal action.
In the present case, at the time of Anthony’s death, Cynthia had pending claims involving property interests, including claims to partition the community property. The trial judge dismissed Cynthia’s pending rules and motions, and found that she could re-urge them in the succession proceedings. However, while many of Cynthia’s outstanding claims are moot, we find that Cynthia had some | soutstanding motions, such as claims pertaining to community property and reim *397 bursement, that can properly go forward in the divorce proceedings. Although a divorce action alone is strictly personal, in the present case, there are ancillary claims involving property interests that are not strictly personal. Accordingly, we find that the trial court erred in granting the Motion to Dismiss filed by the executor of Anthony’s succession.

DECREE

For the foregoing reasons, we affirm the trial court’s judgment granting a divorce pursuant to LSA-C.C. art. 103. However, we amend the judgment to reflect that the LSA-C.C. art. 103 divorce is based on the grounds of adultery under (2), not living separate and apart for 180 days under (1). We reverse the trial judge’s ruling granting the Motion to Dismiss filed by the executor of Anthony’s estate.

JUDGMENT OF DIVORCE AFFIRMED, AS AMENDED; REVERSED IN PART.

. In the appellant's brief and throughout the record, including the petition, appellant erroneously refers to the adultery statute as LSA-C.C. art. 103.2, rather than LSA-C.C. art. 103(2).

. The judgment provides that the divorce was granted under LSA-C.C. art. 103.1, but it appears that the trial judge intended to grant the divorce under LSA-C.C. art. 103(1). LSA-C.C. art. 103.1 simply provides the time periods required to obtain a divorce under LSA-C.C. arts. 102 or 103.

. The trial judge originally signed a judgment granting the Motion to Dismiss on February 22, 2011. Thereafter, he signed an Amended Judgment granting the Motion to Dismiss on March 2, 2011.

. In her brief, Cynthia actually refers to LSA-C.C. art. 103.1 but quotes the language of LSA-C.C. art. 103(1). Accordingly, we will consider LSA-C.C. art. 103(1) when she refers to LSA-C.C. art. 103.1.